In his complaint the plaintiff alleges, that in 1866, the defendant signed the following paper:
"Received of Nathaniel Torian one bond for six hundred dollars, dated 15th May, 1860, on John W. Cunningham, to collect for him;" and that as agent, the defendant did collect from Cunningham, in April, 1867, the sum of $802, which he did not pay over to the plaintiff's testator before his death, which took place in February, 1873, nor has he paid the same to the plaintiff since that time. Also, that in January, 1867, plaintiff's testator sold to defendant thirteen bushels of wheat, worth $3 per bushel.
The defendant in his answer admits that he gave the receipt and received the bond on Cunningham, and that he collected the same; that before receiving the bond, he had intermarried with Martha, a daughter of the testator, and lived with him on the kindest relations until his death, and transacted much business for him in selling mules and other stock, and collecting money for him. That soon after receiving the money on the bond from Cunningham, he, the defendant, tendered the same to the testator who told him to keep it, as he would need it; and the defendant alleges, upon this and other circumstances, that the testator gave the said money as an advancement to the said Martha, his wife, and to himself — the testator having at sundry times made advancements to all his other children, in slaves and money, but had never advanced to his wife anything before this except one horse, nor since, but made equal provision between her and all his other children by his last will and testament. Defendant also admitted receiving the wheat, but denied that it was worth $3 per bushel.
On the trial below, after much evidence was introduced not relevant to the point appealed from, and therefore not recited here, the defendant offered his wife as a witness, and proposed to prove by her that prior to her marriage, her father told her that he had no negroes to give her, but he would give her bonds and money to make her equal with the other children. This evidence was (324) *Page 260 
excluded by his Honor. Defendant further offered to prove by his wife that she was present when he tendered to the testator the money received from Cunningham, and the testator, her father, told him to keep it, as he intended it as an advancement to him and his wife. This evidence was also excluded by his Honor.
Other evidence was tendered and ruled out by his Honor, who instructed the jury to return a verdict for the full amount, principal and interest of the sum collected from Cunningham, and for the wheat at $2 per bushel, which was done. Judgment and appeal by defendant; who assigns as error the refusal of his Honor to allow the wife to testify as proposed, and his refusal to allow the evidence of himself as to the tender of the money to the testator.
As Mrs. Brooks is not a party to this action, and has no interest to be effected by the event of the same, she stands like any other disinterested person, and is a competent witness to prove any transaction between the testator and her husband, J. L. Brooks, the defendant, unless there be something in the marriage relation which renders her incompetent.
It is true that the defendant alleges, that the money, collected by him from Cunningham, was an advancement, by the testator, to himself and his wife, the witness, Martha Brooks. But it must be remembered that the defendant collected this money in 1867, before the adoption of our present Constitution, which ordains that the property of any female shall be and remain the sole and separate estate and property of such female, etc., and that consequently the legal effect of the alleged advancement, if there was one, was to give the money to the husband alone; and that, so far as the wife's estate is concerned, she can (325) have no interest in establishing the fact of an advancement to her husband.
Indeed, as there is a will, which provides for an equal distribution of the estate among all the children of the testator, it would seem that so far as Mrs. Brooks' own separate estate is concerned, her interest might be the other way. But is there anything in the marriage relation which renders her incompetent? The old idea, that the legal existence of the wife is merged into that of the husband, belongs to the past in North Carolina, so far at least as her rights of property are concerned. And we have held, in at least two cases, that husbands and wives are competent and compellable to give evidence for or against each other, save only in the peculiar cases, excepted by the statute. *Page 261 
 Rice v. Keith, 63 N.C. 319; Barringer v. Barringer, 69 N.C. 179.
We think the testimony of Mrs. Brooks should have gone to the jury, to be weighed by them, and received for what it was worth.
Let it be certified that there is error.
PER CURIAM. Venire de novo.
Cited: Hall v. Holloman, 136 N.C. 36; Powell v. Strickland, 163 N.C. 400;Helsabeck v. Doub, 167 N.C. 206.